UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| TANESHA O. SCOTT | CIVIL ACTION |
|---|---|
| VERSUS | NO. 17-48-RLB[1] |
| COMMISSIONER OF SOCIAL SECURITY | |

**RULING ON PLAINTIFF'S SOCIAL SECURITY APPEAL**

Tanesha O. Scott ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-6), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal is **DISMISSED with prejudice**.

**I. PROCEDURAL HISTORY**

Plaintiff filed her application for disability insurance benefits and supplemental security income (Tr. 162-169) on April 15, 2014, alleging that she became disabled on March 1, 2012 because of a disabling condition, namely hypertension, obesity, hepatitis c, gastritis, depression,

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 6), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

chronic joint pain, myalgia, pre-diabetes, and blurred vision. (Tr. 184). Plaintiff's application was initially denied by an Administrative Law Judge ("ALJ"), who first held an administrative hearing (Tr. 35-62) before issuing an unfavorable decision on September 16, 2015. (Tr. 17-34). Plaintiff's request for review of the ALJ's decision (Tr. 14-16) was denied by the Appeals Council on December 28, 2016. (Tr. 1-6). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even

if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are

medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff had met the insured status requirements of the Social Security Act through June 30, 2013.

2. Plaintiff had not engaged in substantial gainful activity since March 1, 2012.

3. Plaintiff had the following severe impairments: degenerative disc disease, fibromyalgia, and morbid obesity.

4. Plaintiff did not meet or medically equal a Listing.

5. Plaintiff retained the RFC to perform light work, except she can lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for two hours in an eight hour day; sit for six hours in an eight hour day; occasionally climb ladders, ropes, and scaffolds; occasionally crouch and crawl; and frequently climb ramps and stairs.

6. Plaintiff was unable to perform any past relevant work.

7. Claimant was a younger individual on the alleged disability onset date.

8. Plaintiff had at least a high school education and was able to communicate in English.

9. Transferability of jobs skills was not material to the determination of disability because the Medical-Vocational Rules support a finding that Plaintiff is not disabled, whether or not she has transferable job skills.

10. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11. Plaintiff was not disabled.

## IV. DISCUSSION

Plaintiff alleges the ALJ committed four errors. First, Plaintiff suggests the ALJ failed to consider or mention the opinion of the VE that no jobs were available for persons possessing Plaintiff's occupational profile. (R. Doc. 9 at 4-6). Specifically, Plaintiff notes that the ALJ posed a second hypothetical, adding to the first the functional limitations associated with missing at least three days of work per month, or needing to lie down intermittently for a total of an hour during an eight-hour work day, and the VE responded that such an individual would not be able to perform any of Plaintiff's past relevant work, nor were there any jobs existing in significant numbers in the national economy that would accommodate those hypothetical limitations. (R. Doc. 9 at 5-6; Tr. 60-61). The Commissioner responds that the ALJ properly relied on the VE's response to a hypothetical that was reflective of the ultimate RFC. (R. Doc. 11 at 5). Further, the Commissioner suggests that the ALJ properly declined to rely on the VE's response to the second hypothetical, which included limitations the ALJ ultimately determined were not borne out by the record. (R. Doc. 11 at 6).

Plaintiff's second argument is that the ALJ erred in her RFC determination when she did not incorporate Plaintiff's alleged need to use a cane. (R. Doc. 9 at 6-8). The Commissioner counters that the ALJ adequately considered Plaintiff's reported use of a cane, as well as

objective medical evidence "showing her demonstrated ability to walk normally." (R. Doc. 11 at 7).

Third, Plaintiff argues the ALJ failed to consider all of Plaintiff's severe and non-severe impairments either in the development of her RFC or in the ultimate determination of her disability status. (R. Doc. 9 at 8-9). The Commissioner responds that the record does not substantiate Plaintiff's claims that certain impairments have imposed functional limitations on Plaintiff that the ALJ should have recognized. (R. Doc. 11 at 9).

Plaintiff's fourth and final argument is that the ALJ's finding that Plaintiff's alleged diabetes was non-severe was not based on substantial evidence. (R. Doc. 9 at 9-10). The Commissioner responds that the ALJ applied the proper standard in determining the severity of Plaintiff's diagnosis of pre-diabetes, and that the objective medical evidence did not warrant a finding of functional limitations that would further erode the occupational base beyond the RFC assessed by the ALJ. (R. Doc. 11 at 11-13).

### A. The ALJ's Consideration of the VE's Testimony

"An ALJ is not required to consider the response to 'a hypothetical question composed of assumptions subsequently found unsupported by medical evidence.'" *Dunn v. Berryhill*, 2017 WL 2841680, at *5 (W.D. Tex. June 30, 2017) (citing *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985)). *See also Siewert v. Colvin*, 2016 WL 7478968, at *11 (M.D. La. Dec. 29, 2016). The ALJ posed two hypotheticals to the VE, as follows:

> **Q:** If you were to assume an individual of claimant's age, education and past work who could lift and carry 20 pounds maximum occasionally, 10 pounds frequently, stand and walk two hour total of eight, sit six hours at least of eight, occasionally climb ladders, ropes and scaffolds, occasionally crouch, crawl, frequently climb ramps and stairs and stoop. Would this individual be able to perform any of claimant's past work?
>
> \*\*\*

> **Q:** For my second hypothetical question if you would add to the first either that the individual would miss three days or more per month or the individual would need to lie down during an eight hour work period.
> **A:** For how long? Just generally –
>
> **Q:** I'm thinking of let's say, intermittently totaling an hour.

(Tr. 59-61). In response to the first hypothetical, the VE testified that such a hypothetical individual could perform Plaintiff's past relevant work as a security guard as it was actually performed, and listed other jobs that exist in significant numbers in the national economy that a hypothetical individual with those limitations could perform. (Tr. 59-60). In response to the second hypothetical, the VE testified that such a hypothetical individual would not be able to perform any of Plaintiff's past relevant work, nor any other work. (Tr. 61). The ALJ ultimately found that Plaintiff maintained the RFC to perform light work, except that she can lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for two hours in an eight hour day, sit for six hours in an eight hour day, occasionally climb ladders, ropes, and scaffolds, occasionally crouch and crawl, and frequently climb ramps and stairs. (Tr. 24). The RFC mirrors the first hypothetical presented by the ALJ to the VE at the administrative hearing, with the exception that the hypothetical included the ability to stoop. (*Compare* Tr. 24 *with* Tr. 59).

An ALJ is not required to rely on a VE's response to a hypothetical question composed of assumptions subsequently found unsupported by medical evidence. *See Owens v. Heckler*, 770 F.3d 1276, 1282 (5th Cir. 1985). Hypothetical questions to the VE that imposed restrictions beyond the RFC need not be considered.

Here, the ALJ based her finding on Plaintiff's residual functional capacity to perform jobs that exist in significant numbers in the national economy. (Tr. 29). Nowhere did the ALJ

find evidence to support an RFC that would include the need to miss three days of work a month or lie down intermittently for an hour during any given eight-hour work day. Because that limitation was not ultimately assessed by the ALJ in the RFC, the VE's response to the corresponding hypothetical is irrelevant. Plaintiff's argument is, therefore, without merit, and the ALJ's decision will not be overturned on this ground.

### B. Plaintiff's Use of a Cane

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Furthermore, "since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand." *Id*.

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because of the "repeated and un-contradicted testimonial evidence of plaintiff's need for and actual use of her cane, and because of the absence of any identifiable evidence to discredit plaintiff's testimony in this regards." (R. Doc. 9 at 7). The Commissioner responds that the "ALJ properly discredited that testimony because it was not borne out by the objective medical evidence." (R. Doc. 11 at 7).

The ALJ "noted that the claimant presented to the hearing with a cane, which she said she had purchased from Walgreens and used for stability." (Tr. 25). The ALJ also noted, however, that in April of 2014, Plaintiff was found to have a normal gait and normal coordination. (Tr. 26). The ALJ summarized that Plaintiff's "allegations are largely contradicted by the findings in her own treatment record of largely normal functioning." (Tr. 26). He also noted that "apart from the claimant's allegations at the hearing of instability when she walks, there is no mention of any gait abnormalities anywhere in the record." (Tr. 28). In short, the ALJ addressed the Plaintiff's use of a cane, and found that incorporation of the use of a cane into the RFC was not warranted.

Based on the ALJ's review of the record, and as discussed in his opinion, the ALJ did not incorporate the need to use a cane into Plaintiff's RFC. Substantial evidence supports this conclusion. To begin, there is no evidence in the record that Plaintiff even used a cane at any medical appointment, let alone any evidence of a prescription for a cane, or a medical professional suggesting that Plaintiff use a cane. Thus, substantial evidence supports a finding that a cane is not medically required.[2] In addition, there is affirmative evidence in the record of Plaintiff maintaining a normal gait without any mention of assistive devices.

Records from Plaintiff's visit to Our Lady of the Lake Regional Medical Center on April 14, 2014 reflects that Plaintiff arrived at the emergency room by "walking," that she was ambulatory, and that her gait was "normal." (Tr. 328, 331). A subsequent hospital visit on June 24, 2014 reflects that Plaintiff was "negative" for a gait problem and that her gait was "normal." (Tr. 598, 599). In her June 15, 2015 testimony at the administrative hearing, Plaintiff states that

---

[2] The portion of SSR 96-9p that suggests that an individual who uses a medically-required hand-held assistive device "may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations," along with Plaintiff's argument that the regulation precludes the use of a cane for any RFC higher than sedentary (R. Doc. 9 at 8), is not relevant to the analysis herein based on the ALJ's conclusion, supported by substantial evidence, that Plaintiff's use of a cane is not medically required.

9

she has had a cane for about a year, but in September of 2014, Dr. Werner indicated that Plaintiff had not fallen in the recent past, and did not use a wheelchair, cane, walker, or other device to walk. (Tr. 612). Plaintiff's assertion of "repeated and un-contradicted testimonial evidence" of her need for and use of a cane is unfounded. The only instance of evidence of Plaintiff's use of a cane is her own uncorroborated testimony. (Tr. 47). Substantial evidence supports the ALJ's decision to discredit Plaintiff's testimony on this issue as it was inconsistent with the objective evidence in the record. As such, substantial evidence supports the ALJ's determination of Plaintiff's RFC on this basis.

### C. Consideration of Plaintiff's Impairments

Plaintiff's third argument is that the ALJ failed to consider all of her impairments—severe and non-severe—in his RFC assessment. (R. Doc. 9 at 8-9). Specifically, Plaintiff argues the ALJ failed to account for her "diabetes, affective disorder, hypertension, hidradenitis suppurativa and insomnia" in his RFC analysis and disability determination. (R. Doc. 9 at 9). The Commissioner responds essentially that the ALJ properly considered Plaintiff's limitations that were supported by the record, and that any failure to consider limitations was a result of lack of any objective evidence of those limitations. (R. Doc. 11 at 8-11).

The ALJ found Plaintiff's degenerative disc disease, fibromyalgia, and morbid obesity to be severe impairments, and her hidradenitis suppurativa, essential hypertension, diabetes mellitus, GERD, Hepatitis C, and affective disorder to be non-severe. (Tr. 22-23). The ALJ noted that insomnia is a symptom, not an impairment, on the grounds that "subjective complaints alone are insufficient to establish a medically determinable impairment." (Tr. 23). In his RFC assessment and discussion, the ALJ discussed her diabetes (Tr. 26), affective disorder (Tr. 27), hypertension (Tr. 26), and hidradenitis suppurativa (Tr. 26).

SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996), requires an ALJ to consider "only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." Further, "[w]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8p at *1. In addition, where an ALJ does not perform a function-by-function analysis, but considers all of the medical records and no records support a contrary conclusion, the ALJ has complied with the requirements of SSR 96-8p. *See, e.g., Gonzales v. Colvin*, 2016 WL 107843, at *7-8 (N.D. Tex. Jan. 11, 2016).

Here, overall, the objective medical records do not support a conclusion contrary to that of the ALJ, who found that Plaintiff's diabetes, affective disorder, hypertension, hidradenitis suppurativa, and insomnia did not impose functional limitations that needed to be incorporated into his RFC finding. With regard to diabetes and hypertension, the ALJ noted that the objective medical records reflected visits for medical management of these impairments, but that there were "no real noteworthy symptoms," "no evidence that the medications required significant adjustment, was ineffective, or that the claimant's symptoms were immune to treatment," and "[n]either her blood pressure nor her diabetes was noted to be uncontrolled." (Tr. 26).

A review of the medical records indicates that there are consistent references hypertension and pre-diabetes. There is no evidence, however, of treatment for these diagnoses beyond medication, no evidence of either of these conditions being uncontrolled, and no evidence of any functional limitations as a result of these diagnoses. Plaintiff testified at the administrative hearing that she stopped working at her last job because her "blood pressure

11

increased and [she] was not able to continue." (Tr. 41). She stated that "they had a hard time controlling [her] blood pressure," but that "[w]ith medication it's better." (Tr. 41). At a minimum, Plaintiff's testimony supports a conclusion that her condition is managed by medication. To the extent Plaintiff asserts that these conditions affect her ability to work, substantial evidence supports that ALJ's conclusion that "claimant's allegations are largely contradicted by the findings in her own treatment record of largely normal functioning. (Tr. 26).

As it pertains to Plaintiff's hidradenitis suppurativa ("HS"), the ALJ noted that the diagnosis was "mild" and the physician suggested diet and weight loss as a contributing factor in her disease process. (Tr. 26). Plaintiff alleges that the ALJ failed to consider her HS in his RFC analysis, but cites no evidence in the record of any functional limitations resulting from her HS, nor does she testify to any limitations at the administrative hearing. Plaintiff visited the LSU Health Baton Rouge Dermatology Clinic on May 7, 2013 for evaluation of her HS. The records indicated that she last had a flare more than a year ago and she had been "[d]oing ok since." (Tr. 452). There are no records of any functional limitations resulting from her HS and thus nothing for the ALJ to incorporate into the RFC analysis pursuant to SSR 96-8p.

The same is true of Plaintiff's alleged "affective disorder." The ALJ referenced Plaintiff's testimony regarding decreased concentration, low energy, and depression, but stated that "claimant's treatment records do not corroborate these symptoms." (Tr. 27). The ALJ also found that Plaintiff "was not noted to be depressed on examinations, did not exhibit any outward signs of mental illness to any of her treatment providers, and did not display the supposed memory loss that she claimed at the hearing." (Tr. 28). In June of 2013, Plaintiff was referred to an adult psychologist because she "wanted to talk to someone," but there is no evidence that she followed through with this. (Tr. 565). She stated in her June 2015 testimony at the administrative hearing

12

that she was scheduled to see a psychologist "months ago" because of "loneliness, crying for just no reason," but that it takes time. (Tr. 51). Although there is mention of depression in various records, there is nothing in the medical records of Plaintiff discussing any limitations at any of her appointments, or any finding of functional limitations as a result thereof, which is the basis of the ALJ's determination that "the claimant's treatment records do not corroborate these symptoms." (Tr. 27); (Tr. 331 – noting that Plaintiff demonstrated a "cooperative, appropriate mood and affect"). This Court's review of the record supports the ALJ's conclusion that there are no functional limitations resulting from her alleged affective disorder.

As it pertains to insomnia, the ALJ suggests in his step two finding that insomnia is "a symptom rather than an impairment, and subjective complaints alone are insufficient to establish a medically determinable impairment." (Tr. 23). The Court notes that there are several instances wherein providers diagnose Plaintiff with insomnia. Records from a May 2013 visit with LSU Sleep Foundation note an assessment including insomnia, and note that Plaintiff was "doing well on ambien." (Tr. 568-69). Plaintiff was reported to have a history of insomnia during a June 2013 stay at Our Lady of the Lake (Tr. 574), and her Final Medication List includes "zolpidem (Ambien CR 12.5 mg oral tablet, extended release) 1 tablets, By Mouth At Bedtime, As Needed, for sleep." (Tr. 576). In April of 2014, Our Lady of the Lake records note a Problem/Medical History of Insomnia. (Tr. 329). At visits with Dr. Werner in June and September of 2014, Plaintiff was noted to be diagnosed with chronic insomnia and reported that she "still can't sleep well." (Tr. 612, 632).

Plaintiff does not advocate any functional limitations attributed to insomnia, but rather states that "plaintiff's noted fibromyalgia and obesity may have contributed to her fatigue, sleep disturbance, depression and painful periods (R. 606)." (R. Doc. 9 at 9). Plaintiff references Tr.

13

606, which is merely a continuation of a medication list, but the Court presumes Plaintiff intended to reference Tr. 607, which is a handout regarding fibromyalgia that lists symptoms of the impairment, including sleep and fatigue problems, depression or mood changes, and painful periods (dysmenorrhea). However, a handout reflecting the possibility of certain symptoms does not evidence the existence of those symptoms, nor does the possibility of certain symptoms rise to the level of a medically determinable impairment that should be addressed when an ALJ makes his RFC finding.

To the extent Plaintiff's insomnia contributed to her supposed decreased concentration or any other limitations also covered under her alleged affective disorder, the Court's discussion above applies here as well. Based upon a review of the record, the Court finds that any potential error the ALJ committed in failing to address Plaintiff's insomnia in his RFC analysis is harmless. There is no evidence of any functional limitations in the objective medical records (not already covered by the ALJ) that could be attributable to insomnia. Thus, any error committed by the ALJ in failing to address insomnia is harmless and his decision will not be overturned on that ground.

### D. Plaintiff's Diabetes Condition

Plaintiff's final argument is that the ALJ's finding that here diabetes condition was "non-severe" is not supported by substantial evidence. (R. Doc. 9 at 9-10). In support of her argument, Plaintiff suggests that the ALJ did not apply the proper severity standard, that her diabetes should have been found to be a severe impairment because of a family history of diabetes, and risk associated with a diagnosis of diabetes, some of which "may adversely impact plaintiff's job performance." (R. Doc. 9 at 10).

"At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii). Implicit in the requirement at step two that an impairment be severe, is that it first must be an impairment at all. *See* 20 C.F.R. § 404.1521 ("After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe."). In defining a medically determinable impairment ("MDI"), the SSA has provided the following guidance:

> To be found disabled under the law, an individual must have a medically determinable severe impairment, i.e., an impairment which has demonstrable anatomical, physiological or psychological abnormalities. Such abnormalities are medically determinable if they manifest themselves through medical evidence consisting of symptoms, signs, and laboratory findings. Symptoms alone, however, do not constitute a basis for finding a medically determinable impairment.

SSR 82-58, 1975-1982 Soc. Sec. Rep. Serv. 771, 1982 WL 31378, at *1 (Jan. 1, 1982). "The burden of providing the existence of a medically determinable impairment, part of the analysis at the second step, is on the Plaintiff." *Mayeux v. Comm'r of the Soc. Sec. Admin.*, 2018 WL 297588 at *4 (M.D. La. Jan. 4, 2018) (citing *Rowe v. Colvin*, 2017 WL 3821473, at *8 (M.D. La. Aug. 31, 2017)).

In her briefing, Plaintiff references only her "diabetes condition," without any specificity or citation to a diagnosis of diabetes. Plaintiff suggests that this "diagnosis is of recent origin (i.e., diagnosed in 2014) (See R. 282)." (R. Doc. 9 at 10). The citation referenced is from a March 11, 2014 visit at Franciscan Missionaries of Our Lady Health System that notes a diagnosis of pre-diabetes. (Tr. 282). The records further reveal that, as early as November 2, 2013, Plaintiff's blood sugar was tested at an appointment with Dr. Werner and she was

diagnosed with pre-DM. (Tr. 254). The diagnosis of pre-diabetes—not diabetes—remains consistent throughout the medical records. (Tr. 282, 329, 342, 388, 485, 563, 574, 612, 619, 623, 632, 692, 699, 716). On a Diabetes Education Referral Form from LSU Health dated July 29, 2013, Plaintiff was noted to have a diagnosis of pre-DM and an HbA1C of 5.7.[3] (Tr. 485). The same diagnosis of pre-Diabetes continued to be recorded in the June 25, 2014 Diabetes Education Referral Form. (Tr. 619).

Based on the above, the question is whether substantial evidence supports the ALJ's finding that Plaintiff's pre-diabetes was non-severe. The ALJ found that Plaintiff's diabetes condition was non-severe "because the medical evidence of record, as discussed below, shows them to be no more than slight abnormalities having such a minimal effect on the claimant that they would not be expected to interfere with her ability to work." (Tr. 23). The ALJ goes on to state that "the treatment notes document the absence of serious symptoms related to diabetes and hypertension. They do not sound any note of alarm, urgency, or unusual concern, such as would be expected in the case of a patient with an uncontrolled A1C." (Tr. 23).

As the Plaintiff notes, the "operative terms in the regulations for 'non-severity' are 'slight abnormality' and 'minimal effect.'" (R. Doc. 9 at 10). *See also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). The ALJ cited the proper standard, both in his initial step two discussion (Tr. 22), and when he found non-severity as to diabetes specifically (Tr. 23). Plaintiff's suggestion that the ALJ applied the wrong standard by using the terms "alarm, urgency, or unusual concern" is without merit.

Plaintiff's next argument is essentially that Plaintiff's diabetes condition has or will have a "minimal effect on her work capacity given the existing effects of this disease on her sight,

---

[3] A Hemoglobin A1c level of 5.7 is the lowest level associated with pre-diabetes. *Source: Centers for Disease Control and Prevention*.

energy level, and her ability to effectively ambulate." (R. Doc. 9 at 10). Plaintiff suggests, in part, that her diabetes condition should have been considered severe due to her family history and potential long-term complications. Neither are relevant to the analysis. In order for a medically determinable impairment to be considered severe, there must be an impairment established by "demonstrable anatomical, physiological or psychological abnormalities" (SSR 82-58). Family histories of impairments and potential, but unrealized complications of an impairment are not evidence that would establish severity of an impairment.

     The ALJ found that "[n]either her blood pressure nor her diabetes was noted to be uncontrolled." (Tr. 26). The only "symptoms already realized" that Plaintiff suggests she has complained of are fatigue, arm and leg pain and numbness, sleep disturbance, blurred vision and foot pain. (R. Doc. 9 at 10). With regard to fatigue, Plaintiff cites to a page containing a partial medications list, but as noted above, the Court presumes Plaintiff intended to cite to the subsequent page. (R. Doc. 9 at 10 (citing Tr. 606); Tr. 607). That subsequent page notes that "sleep and fatigue problems" are symptoms of fibromyalgia. The ALJ concluded that Plaintiff's fibromyalgia was a severe impairment (Tr. 22), and there is no evidence that Plaintiff's sleep and/or fatigue problems are attributable to her diabetes condition. Plaintiff's citation to sleep disturbance (Tr. 692) arises from an October 23, 2014 visit to LSU Health. Therein, a diagnosis of pre-diabetes is noted, but "exhaustion" is discussed in the context of Plaintiff's myalgia, joint pain, and positive ANA. The records note "Pt referred for myalgia/joint pain/[positive]ANA. Pt complains of extreme fatigue. 'I'm exhausted if I go to restroom'." (Tr. 692). The "exhaustion" is attributed to her myalgias, not pre-diabetes, and fibromyalgia was determined to be a severe impairment by the ALJ and therefore considered. (Tr. 22). Even assuming Plaintiff's sleep problems were attributable to her diabetes, as discussed above in Section C, there is no evidence

17

of any functional limitations resulting from these symptoms and, similarly, no evidence that her sleep problems would have more than a minimal impact on her ability to work.

The same is true with regard to Plaintiff's arm and leg pain and numbness, blurred vision, and foot pain. None of these symptoms were attributed to Plaintiff's diabetes condition, and all of these symptoms were addressed by the ALJ in the context of other impairments or diagnoses. Plaintiff cites to April 14, 2014 Emergency Department Discharge Instructions from Our Lady of the Lake wherein Plaintiff was diagnosed only with "Arm and leg pain; Degenerative joint disease 715.0." (R. Doc. 9 at 10 (citing Tr. 286)). Plaintiff cites to Ambulatory Clinic Notes from a July 29, 2013 admission at Our Lady of the Lake (Tr. 518) in support of her complaining of blurred vision, but there is no mention of blurred vision on that page, nor any surrounding page. In any case, the ALJ did discuss Plaintiff's complaint of blurred vision in his decision, noting that she had complained of blurred vision, "but she indicated that it improved with blinking and the doctor marked her vision as normal." (Tr. 26 (citing Tr. 268)). Additionally, Plaintiff visited the LSU Health Opthalmology Clinic for an examination on July 8, 2014, and it was noted that "eye exam is nml." (Tr. 627). Her allegation of foot pain in reference to diabetes comes from a July 29, 2013 admission to Our Lady of the Lake wherein she was diagnosed with foot pain among several other things, including chronic lower back pain, upper back pain, depression, chronic Hepatitis C, morbid obesity, and pre-diabetes. (Tr. 515). She was given several handouts on exercises to be done at home, and advised to "wear arch supportive athletic shoes except when sleeping." (Tr. 517, 520-542). There is no evidence of her foot pain being attributed to diabetes or of any functional limitations as a result of this pain not considered by the ALJ in determining Plaintiff's RFC.

In sum, there is no evidence, cited by Plaintiff or otherwise, of her arm and leg pain and numbness, blurred vision, fatigue, sleep disturbance, or foot pain being symptoms of pre-diabetes that would corroborate her argument that the ALJ failed to conclude her diabetes condition was a severe impairment.

Lastly, the Court is cognizant that a claimant's symptoms being traced to a particular impairment is not necessarily a requirement for a finding of a severe impairment. Where, however, an ALJ considers all of the relevant symptoms in his RFC analysis in concluding that no further limitations are warranted, an absence of a particular impairment being found severe may be supported by substantial evidence. The claimant in *Tigert v. Astrue*, 2012 WL 1889694, at *5 (N.D. Tex. May 2, 2012), *report and recommendation adopted*, 2012 WL 1899388 (N.D. Tex. May 24, 2012), argued that the ALJ failed to accommodate all of his limitations because the ALJ did not find that his prior foot fracture constituted a severe impairment at step two. The court disagreed, holding the following:

> This argument, too, fails because in making his RFC determination, the ALJ considered all of Tigert's symptoms and complaints and expressly stated, "The medical evidence, when considered in the light most favorable to the claimant, does not warrant further limitations." (Tr. 22.) Because the ALJ considered all his symptoms, including those attributable to Tigert's foot fracture, the Court concludes that the ALJ's decision not to treat the foot fracture as a severe impairment in conjunction with his RFC determination is supported by substantial evidence.

*Tigert*, 2012 WL 1889694 at *5. This rationale is relevant and applicable herein. Even if Plaintiff's arm and leg pain and numbness, blurred vision, fatigue, sleep disturbance, or foot pain were attributable to her diabetes condition, the ALJ considered all of those symptoms in his opinion such that any finding that this condition was not a severe impairment is harmless, and substantial evidence supports the ALJ's decision.

The ALJ discussed Plaintiff's complaints of pain in conjunction with the medical records at length. (Tr. 26, 27, 28). Regarding pain, the ALJ noted several portions of the medical records wherein Plaintiff complained of pain, including in her arms, legs, and foot, but that overall the findings were substantially normal, concluding the following: "Given her full range of motion and normal muscle, along with essentially normal musculoskeletal findings in other examinations, the undersigned finds that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 27). A complaint of blurry vision was acknowledged by the ALJ, who then noted that Plaintiff "indicated that it improved with blinking and the doctor marked her vision as normal." (Tr. 26). This Court's discussion of Plaintiff's insomnia in Section C, *supra*, is applicable herein, as well. That is to say, any failure of the ALJ to discuss insomnia is harmless because there is no evidence of any functional limitations.

Based on the Court's review of the medical records, substantial evidence supports the ALJ's conclusion that Plaintiff's diabetes condition did not constitute a severe impairment. There is no evidence of any adverse effects, symptoms, or limitations that would support a finding of more than minimal limitations on the Plaintiff's ability to perform work-related activities. The ALJ's decision will not be overturned on this ground.

## V. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on March 14, 2018.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**